UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARYAM AYAZI,

        Plaintiff,

    - against -

NEW YORK CITY BOARD OF EDUCATION,

        Defendant.
-----------------------------------------------------------X

MEMORANDUM & ORDER
98-CV-7461 (NGG)(CLP)

GARAUFIS, United States District Judge.

    Pro se plaintiff, Maryam Ayazi ("Plaintiff"), who contracted polio as a child and suffers from the effects of the disease, commenced this action against the New York City Board of Education ("BOE" or "Defendant") in December 1998. The Plaintiff, a teacher specializing in teaching English as a second language, was hired by BOE in May 1996. One year later, after receiving several unsatisfactory ratings, her superiors recommended discontinuance of her probationary teacher status. In this action, Plaintiff alleges that BOE discriminated against her because of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), the Rehabilitation Act of 1973, the New York State Human Rights Law, and the New York City Human Rights Law.

    Following Plaintiff's filing of the complaint, BOE moved for summary judgment on all of Plaintiff's claims. In a Report and Recommendation ("R&R") dated March 18, 2004, Magistrate Judge Cheryl Pollak recommended that Defendant's motion for summary judgment be granted in full, and that Plaintiff's claims be dismissed in their entirety. The Plaintiff filed numerous objections to the R&R, which this court considered in a Memorandum & Order ("M&O") dated

and denied in part the Defendant's motion for summary judgment. Specifically, summary judgment to BOE was granted with respect to Plaintiff's first, second, third and fifth causes of action. The motion was denied with respect to Plaintiff's fourth cause of action, which alleges that Plaintiff was denied procedural due process by the lack of a pre-deprivation hearing on whether an "R" would be placed on her teaching license, thereby cancelling or restricting her teaching licenses in violation of the Due Process clause. Finally, in an M&O dated April 8, 2005, this court (1) denied Plaintiff's motion for reconsideration of the M&O granting summary judgment to the Defendant on four of Plaintiff's five claims; and (2) denied summary judgment for both parties regarding Plaintiff's fourth claim.

Currently before the court is BOE's renewed motion for summary judgment with respect to the Plaintiff's fourth claim, i.e. the procedural due process claim concerning the alleged "R" placed on her teaching license. BOE now moves to dismiss this remaining claim on the grounds that Plaintiff no longer has standing to pursue it in light of her filing of a voluntary petition for bankruptcy. The court now considers the Defendant's motion, and holds that Plaintiff's claim remains the property of her bankruptcy estate and she therefore lacks standing to pursue it before this court. For the reasons set forth more fully below, BOE's motion for summary judgment is granted.

## I. Undisputed Facts

The basic facts relevant to deciding the pending motion are not in dispute, but rather reflected clearly in the documentary evidence submitted by both parties. The basic factual scenario is as follows. On October 3, 2002, Plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court, Eastern District of New York. (Defendant's

Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1 Stmt."), ¶ 5; Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1(e) ("Pl.'s 56.1(e) Stmt."), ¶ 1). Plaintiff did not list the instant lawsuit on any of the schedules annexed to her voluntary petition.[1] (See Exhibit D, annexed to Declaration of Jonathan Bardavid in Support of Defendant's Motion for Summary Judgment (hereinafter "Def.'s Ex."); Def.'s 56.1 Stmt., ¶ 6). Plaintiff listed the instant suit, instead, on the Statement of Financial Affairs that was filed with her voluntary petition. (See Def.'s Ex. E; Def.'s 56.1 Stmt., ¶ 8; Pl.'s 56.1(e) Stmt., ¶ 3). Richard J. McCord was assigned to serve as the Trustee to Plaintiff's bankruptcy action. (Pl.'s 56.1(e) Stmt., ¶ 4; Exhibit M annexed to Affidavit of Maryam Ayazi in Opposition to Defendant's Motion for Summary Judgment ("Ayazi Aff.")).

On November 20, 2002, the Plaintiff met with her Trustee at a meeting of creditors. (Pl.'s 56.1(e) Stmt., ¶ 5). The Trustee requested that the Plaintiff send to him documentation proving the existence of the instant action, which the Plaintiff provided by certified mail, which was signed for on November 25, 2002. (Id., ¶¶ 5-9; Ayazi Aff. Ex. P). On December 12, 2002, the Clerk of Court for the E.D.N.Y Bankruptcy Court issued a "Notice of Discovery of Assets" to debtors, creditors, and interested parties in the Plaintiff's bankruptcy matter. (Def.'s 56.1 Stmt., ¶ 12; Def.'s Ex. H; Pl.'s 56.1(e) Stmt., ¶ 10; Ayazi Aff. Ex. M). The Notice of Discovery of Assets informed creditors that they must file claims in order to share in any distribution from the estate by March 11, 2003. (See id.). The Notice of Discovery of Assets did not list Plaintiff's

---

[1] Specifically, the lawsuit is not included on Schedule B, which requires a list of all personal property of the debtor "of whatever kind." (Def. Ex. D).

3

instant lawsuit. (See Def.'s Ex. H). On October 2, 2003, Plaintiff's bankruptcy case was closed. (Def.'s Rule 56.1 Stmt., ¶ 14; Def.'s Ex. I; Pl.'s 56.1(e) Stmt., ¶ 15).

The aforementioned facts represent the entirety of facts material to the instant motion, none of which the court finds in dispute. The court notes, however, that in her Affidavit and accompanying "Statement of Material Facts in Dispute," the Plaintiff raises the merits of the previously decided summary judgment motions concerning her four dismissed claims. To the extent that the Plaintiff moves for reconsideration of this court's prior decisions through her opposition papers, her motion is denied.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. Id. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. Id. at 252; Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

## III. Discussion

### A. *Standing*

BOE argues that it is entitled to judgment as a matter of law because the undisputed facts of this case demonstrate that the Plaintiff lacks standing to pursue her due process claim because the claim remains property of the bankruptcy estate. It is well established that, as a threshold matter, a plaintiff must have standing to pursue claims in federal court. Altman v. Bedford Cent. School Dist., 245 F.3d 49, 69 (2d Cir. 2001). Without standing, this court does not have jurisdiction to hear the claim. See U.S. Const. art. III. In addition, "if the plaintiff loses standing at any time during the pendency of the proceedings in the district court or in the appellate courts, the matter becomes moot, and the court loses jurisdiction." Altman, 245 F.3d at 69(citing Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)). The issue before the court, therefore, is whether the Plaintiff divested herself of standing through the filing of her voluntary petition for Chapter 7 bankruptcy.

### B. *The Bankruptcy Scheme*

When Plaintiff filed her bankruptcy petition, a bankruptcy estate was created that is defined by statute to include all of Plaintiff's assets, including "all legal and equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541. The vested bankruptcy estate includes pending causes of action. See Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989) ("By operation of section 541, any claims ostensibly belonging to the Sewards and asserted by them in the foreclosure action became property of the estate when they sought protection under the bankruptcy laws."); In re Corbi, 149 B.R. 325, 329 (Bankr. E.D.N.Y. 1993) ("The personal injury action and the proceeds thereof are clearly property of the estate."); see also In re De Berry, 59

B.R. 891, 895 (Bankr. E.D.N.Y. 1986) ("The personal injury action and any proceeds realizable therefrom constituted an interest in property held by the Debtor at the commencement of the case and was accordingly property of the estate."). In accordance with 11 U.S.C. § 521(a)(1)(B)(i), a debtor shall file a schedule of assets and liabilities. The debtor's assets include any causes of action that could be brought by the debtor. Kunica v. St. Jean Financial, Inc., 233 B.R. 46, 52 (S.D.N.Y. 1999) ("A basic tenet of bankruptcy law is that all assets of the debtor, including all pre-petition causes of action belonging to the debtor, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors."); see also Seward, 888 F.2d at 963.

If a cause of action becomes property of the bankruptcy estate, "the debtor may not bring suit on that action unless the property has been abandoned by the trustee." Barletta v. Tedeschi, 121 B.R. 669, 671-72 (N.D.N.Y. 1990) (internal quotation omitted); see also In re Drexel Burnham Lambert Group, Inc., 160 B.R. 508, 514 (S.D.N.Y. 1993) (noting that vested claims belong not to the debtor, but to the bankruptcy trustee). Pursuant to 11 U.S.C. § 554(d), when the bankruptcy estate is closed, property of the estate that was abandoned reverts back to the debtor. See 11 U.S.C. § 554(d). The converse of this rule is that "property of the estate that is not abandoned . . . and that is not administered in the case remains property of the estate." Id. Thus, with respect to a cause of action that was included in the bankruptcy estate, the debtor lacks standing to pursue that cause of action once the bankruptcy estate closes *unless* the cause of action was abandoned in accordance with 11 U.S.C. § 554. See Rosenshein v. Kleban, 918 F.Supp. 98, 102-3 (S.D.N.Y. 1996); Barletta, 121 B.R. at 672 ("If the trustee chooses to abandon the claim or is ordered by the court to do so, the debtor may then assert title to the cause of action and bring suit on it.") (internal quotation omitted).

There are two ways in which property that is part of a bankruptcy estate may be abandoned. First, after "notice and a hearing," property that is "burdensome to the estate or that is of inconsequential value and benefit to the estate" can be abandoned by the trustee. 11 U.S.C. § 554(a),(b).[2] Second, property may be abandoned by operation of law if it has been "scheduled" in accordance with 11 U.S.C. § 521(1) and "not otherwise administered at the time of the closing of a [bankruptcy] case." 11 U.S.C. § 554(c); see also EDP Med. Computer Sys., Inc. v. United States, No. 03-CV-3619, Slip Copy, 2005 WL 3117433, *5 (E.D.N.Y. Nov. 22, 2005) (explaining the two ways property may be abandoned under bankruptcy law).

C.  *Abandonment of the Plaintiff's Claim*

1.  *Abandonment after notice and an opportunity to be heard*

Section 554(a) of the Bankruptcy Code provides that the trustee may abandon property of the estate after there has been notice to the creditors and a hearing. In this case, there was no notice provided and no hearing held on the abandonment of Plaintiff's cause of action against BOE. Accordingly, the court finds that there has been no abandonment of the property pursuant to section (a) of 11 U.S.C. § 554.[3] See In re Schoenewerk, 304 B.R. 59 (2003), 61-2 (Bankr. E.D.N.Y. 2003) (noting that in the absence of the trustee filing a motion on notice and hearing to abandon any nonexempt asset that is burdensome or of inconsequential value or benefit to the estate, 11 U.S.C. §554(a) is "inapplicable."); In re Betty Owens Schs., Inc., No. 96 Civ. 3576,

---

[2] According to the statute, the trustee may abandon the property him or herself, after notice and a hearing, or the court may order the trustee to abandon property "on request of a party in interest" after notice and a hearing. 11 U.S.C. § 554 (a),(b).

[3] As Plaintiff herself puts it, "there is no dispute by either party that § 554(b) does not apply." (Pl.'s Mem. Law. Opp'n Def.'s Mot. for Summary Judgment ("Pl.'s Opp'n Br."), at 4).

1997 WL 188127, *3 (S.D.N.Y. Apr. 17, 1997) ("It is clear that there has been no abandonment under section 554(a) because the debtor-in-possession never noticed a hearing regarding an abandonment of the alleged causes of action.")[4]

From the Plaintiff's submissions, it is clear that she objects to the court's conclusion. Plaintiff maintains that there has been proper abandonment by the Trustee as a result of the issuance of the "Notice of Discovery of Assets" by the Bankruptcy Court on December 12, 2002. As Plaintiff explains: "Here, the undisputed facts show that abandonment occurred under § 554(a) when the trustee gave the creditors 90 days to file claims on 'possible' assets, and then filed a No-Asset Report when no claims were filed which closed the bankruptcy case." (Pl.'s Opp'n Br., at 4).[5]

---

[4] Note that a "debtor-in-possession" serves the same role in a Chapter 11 bankruptcy case as a Trustee does in a Chapter 7 bankruptcy case. See Betty Owens Schs., 1997 WL 188127, at * 3 ("There is very little difference between a debtor-in-possession and a trustee because a debtor-in-possession has virtually the same powers as a trustee. Two powers of the debtor-in-possession are the power to abandon and the power to sell property of the estate.") (internal citation omitted).

[5] To clarify the chronology: On October 8, 2002, the E.D.N.Y. Bankruptcy Court issued a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines," which provided notice of the appointment of the Trustee and the time and location of the Meeting of Creditors. (Ayazi Aff. Ex. L). On December 12, 2002, the Trustee issued a "Notice of Discovery of Assets" that stated the following:

> It appeared from schedules filed when this case was initiated that there were no assets from which dividends could be paid to creditors and this was indicated on the notice of meeting of creditors. It now appears that the payment of a dividend may be possible.

The Notice of Discovery of Assets apprised potential creditors that they would have ninety days to file claims with the court. (Ayazi Aff. Ex. K). On May 27, 2003, the Trustee filed a "No Asset Report" in the Plaintiff's bankruptcy case. (See Ayazi Aff. Ex. M (Docket Entry No. 8)). On October 2, 2003, the case was closed.

To the extent that the Plaintiff argues that knowledge on the part of the Trustee of the existence of her lawsuit suggests that the Trustee's filing of a No Asset Report constitutes abandonment, the Plaintiff is mistaken. See Mendelsohn v. Ozer, 241 B.R. 503, 506 (E.D.N.Y. 1997) ("The filing of a Report of No Distribution is insufficient proof of a conscious abandonment of an asset."); Donaldson, Lufkin & Jenrette Securities Corp. v. Mathiasen, 207 A.D. 2d 280, 282 (1st Dep't 1994) ("A trustee cannot abandon claims of which she is ignorant. In any event, actual knowledge by the trustee of a claim is no substitute for improper scheduling.") (internal citation omitted). Even with actual knowledge of the lawsuit by the Trustee, unless the property was properly abandoned in accordance with section 554, it remains part of the bankruptcy estate.

Nonetheless, in further support of her position, the Plaintiff looks to Rule 6007(a) of the Federal Rule of Bankruptcy Procedure, which governs the process of abandonment of property pursuant to section 554(a). The Rule provides that "[u]nless otherwise directed by the court, the trustee . . . shall give notice of a proposed abandonment . . . to . . . all creditors." Fed. R. Bankr. P. 6007(a). Further, if a party in interest timely files and serves an objection, "the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct." Id. The Advisory Committee Notes to Rule 6007 provide further instruction on the proper manner of notice and hearing in this context:

> Subdivision (a) requires the notices to be sent to all creditors, indenture trustees, and committees elected under § 705 or appointed under § 1102 of the Code. This may appear burdensome, expensive and inefficient but the subdivision is in keeping with the Code's requirement for notice and the Code's intent to remove the bankruptcy judge from undisputed matters. The burden, expense and inefficiency can be alleviated in large measure by *incorporating the notice into or*

> *together with the notice of the meeting of creditors* so that separate notices would not be required.

Adv. Comm. Notes to Fed. R. Bankr. P. 6007 (emphasis added).

Relying on the portion of the comment highlighted above – that notice of abandonment can be incorporated into notice of the meeting of creditors – Plaintiff suggests that this is what was done with respect to her case, and therefore that the Trustee properly abandoned her claim. The Plaintiff's position is somewhat unclear, as she does not identify clearly which of the Notice of Meeting of Creditors or the Notice of Discovery of Assets (or both) she maintains provided adequate notice under Fed. R. Bankr. P. 6007(a) and Section 554(a) of the Bankruptcy Code. Neither position, however, has merit.

Local Rule 6007-1 of the Rules of the E.D.N.Y Bankruptcy Court explains in greater detail the notice required to achieve abandonment of property pursuant to Rule 6007(a) and Section 554(a). The Local Rule provides:

> The notice of a proposed abandonment or disposition of property pursuant to Bankruptcy Rule 6007(a) shall the describe the property to be abandoned or disposed of, and state concisely the reason for the proposed abandonment or disposition.

E.D.N.Y. Bankr. Local R. 6007-1. Neither the Notice of Meeting of Creditors nor the Notice of Discovery of Assets complies with Local Rule 6007-1.

The Notice of Meeting of Creditors issued in Plaintiff's bankruptcy case provides no notice at all regarding possible abandonment of property. In fact, to the contrary, the Notice of Meeting of Creditors states that "[t]here does not appear to be any property available to the trustee to pay creditors. . . . If it later appears that assets are available to pay creditors, you will be sent another notice telling you that you may file a proof of claim, and telling you the deadline for

filing a proof of claim." (Ayazi Aff. Ex. L, at 2). In light of this language, the court must conclude that this document provided no notice whatsoever to the Plaintiff's creditors of a proposed abandonment of property, let alone the required description of the property to be abandoned and the concise reasons for abandonment, as is required by Local Rule 6007-1.

Similarly, the Notice of Discovery of Assets does not provide sufficient notice to comply with the applicable statutory provisions and rules. This one-page document simply states that although at the time the Notice of Meeting of Creditors was issued, there appeared from the schedules to be no assets from which creditors might receive dividends, "[i]t now appears that the payment of a dividend may be possible." (Ayazi Aff. Ex. K). The notice then alerted creditors of the deadline for filing claims, and appears to have had a blank Proof of Claim form attached. (Id.). Again, there is no conceivable way to conclude that the Notice of Discovery of Assets complies with Local Rule 6007-1, as it provides no notice of a proposed abandonment and in no way describes the property to be abandoned or explains the reason for the proposed abandonment, as is required by the local rule. See E.D.N.Y. Bankr. Local R. 6007-1.

Therefore, the court holds that there has been no abandonment of the Plaintiff's claim pursuant to 11 U.S.C. § 554(a).[6]

---

[6] I note for the record that it is of no consequence that pursuant to the applicable statutes and rules, a hearing is not required if there has been no proof of claim. The Plaintiff correctly points out that the requirement is notice and an *opportunity* to be heard. Contrary to the Plaintiff's arguments (see Pl.'s Opp'n Br., at 8-9), however, the fact that no hearing occurred in this case is irrelevant. The infirmity on which the decision rests with respect to abandonment under 11 U.S.C. § 554(a) is lack of notice, not lack of hearing.

## 2. *Abandonment by operation of law*

The second way in which property may be abandoned under the Bankruptcy Code is by operation of law, meaning it has been "scheduled" in accordance with 11 U.S.C. § 521(1).[7] Thus, if Plaintiff properly scheduled this lawsuit under section 521(1), she is free to pursue her remaining claim. However, if the asset was improperly scheduled, the lawsuit has not been abandoned by operation of law, and Plaintiff lacks standing to pursue the claim. See Tuttle v. Eqifax Check Services, Inc., No. 3-96-948, 1997 WL 835055, *2 (D. Conn. June 17, 1997) ("'Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed.'") (quoting Rosenshein, 918 F. Supp. at 103)); In re Drexel Burnham Lambert Group, Inc., 160 B.R. 508, 514 (S.D.N.Y. 1993) ("By operation of 11 U.S.C. § 554(c) and (d), any asset not scheduled pursuant to 11 U.S.C. § 521(1) remains property of the bankrupt estate, and the debtor loses all rights to enforce it in his own name."); see also Hutchins v. I.R.S., 67 F.3d 40, 43 (3d Cir. 1995) ("It is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554.").

The facts are not in dispute. The Plaintiff listed the instant lawsuit on her Statement of Financial Affairs. (See Def. Ex. E). She did not list the claim as property on any of her filed schedules; specifically, she failed to include it on Schedule B: Personal Property. (See Def. Ex. D). Section 521(1) requires that the bankruptcy debtor file a "schedule of assets and liabilities." 11 U.S.C. § 521(1). BOE, therefore, argues that because the lawsuit was not included on

---

[7] The property also must be "not otherwise administered" at the time of the closing of the bankruptcy case for abandonment by operation of law to occur. 11 U.S.C. § 554(c). In this case, there is no claim that the Plaintiff's suit was otherwise administered.

12

Plaintiff's schedule of assets and liabilities, or any other schedule, it is unscheduled for abandonment purposes and thus remains property of the bankruptcy estate.

Although there is a dearth of precedent on this issue in this district and circuit, the majority of federal courts have adopted BOE's position, including the Northern District of New York in the case of Conklin v. St. Lawrence Valley Educ. Testing Council, Inc., 93-CV-984, 1994 WL 780898 (N.D.N.Y. Oct. 31, 1994) (Report and Recommendation, Mag. J. Scanlon), *adopted by* Order, C.J. McAvoy, dated Mar. 8, 1995. There, the court was presented with facts analogous to the instant case. The plaintiff had filed a Chapter 7 bankruptcy petition and "did not include his potential claim against the defendants in any of the bankruptcy schedules required to be filed by Section 521 of the Bankruptcy statute." Conklin, 1994 WL 780898, at *2. The plaintiff did, however, subsequently include the claim against some defendants in an Amended Statement of Financial Affairs. Id. When the defendants asserted a lack of standing to pursue the unscheduled claim, the plaintiff argued that its listing in the Amended Schedule of Financial Affairs was "sufficient notice under the statute and the fact that the trustee knew of and was provided information about the potential claim and still filed a No-Asset Report shows that he intended to abandon this potential claim." Id. The court, relying on decisions from several other bankruptcy courts in numerous districts (see id. at *3 (citing cases)), rejected the plaintiff's argument and determined that the property was not abandoned because it was not properly scheduled: "Even though an asset is clearly brought to the trustee's attention, the asset must be properly identified in the right schedule before a deemed abandonment can occur." Id. at *3 (citing In re McCoy, 139 B.R. 430, 431 (Bankr. S.D. Ohio 1991)).

In support of its holding, the Northern District court looked to the policy underlying the abandonment statute, noting that before passage of Section 554, there was no statutory provision as to what constituted abandonment. Rather, "any clear showing of the trustee's intent to abandon was sufficient." Id. at *4. This practice, however, raised complex and difficult factual questions on proof of intent, which the passage of Section 554 meant to obviate. See id. The Conklin court explained:

> "It would be neither desirable nor consistent with Section 554 to resolve abandonment questions by returning to the uncertain practice of attempting to determine the trustee's intentions . . . [I]n order for property to be abandoned by operation of law pursuant to Section 554(c), the debtor must formally schedule the property before the close of the case. It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to Section 521(1).

Conklin, 1994 WL 780898, at * 4 (quoting Stanley v. Sherwin-Williams Co., 156 B.R. 25, 26 (Bankr. W.D. Va. 1993)). The vast majority of courts faced with this issue have adopted the identical reasoning and holding of Conklin, finding that any claims not properly scheduled, even if the trustee has knowledge of the claims, are not abandoned by operation of law in accordance with Section 554(c). See e.g., Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995); Bittel v. Yamato Int'l Corp., 70 F.3d 1271, No. 94-1396, 1995 WL 699672, at *4 (6th Cir. 1995); In re Pace, No. 92-36787, 1994 WL 55523, at *2 (9th Cir. Feb. 24, 1994); Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991); In re Ahearn, 318 B.R. 638, 642-43 (Bankr. E.D. Va. 2003); In re Munoz-Gonzalez, No. 99-80751, 2001 WL 34076433, *3-*4 (Bankr. C.D. Ill. Jan. 30, 2001); In re Kottmeier, 240 B.R. 440, 443-44 (M.D. Fla. 1999).

In lone opposition to the numerous cases cited above and others holding likewise, is the case of In re Hill, 195 B.R. 147 (Bankr. D. N.M. 1996), which supports the Plaintiff's position.

The facts of Hill are strikingly similar. The debtor-plaintiff filed pro se a voluntary Chapter 7 bankruptcy petition, in which he listed a pending lawsuit against him in his Statement of Financial Affairs, but not in his Schedule of Assets and Liabilities. Hill, 195 B.R. at 148. The Trustee was well aware of the lawsuit, but never explicitly abandoned it with notice and a hearing. Ultimately, the bankruptcy case was closed and the Trustee "filed a report of no distribution and notice of abandonment of assets in which he abandoned 'any and all assets listed on the *statements and schedules* filed in this case which have not been otherwise administered." Id. (emphasis added).

The Hill court departed from the majority of cases and held that the improperly scheduled property of the pro se debtor-plaintiff was abandoned by the trustee notwithstanding the incorrect listing. See id. at 151. The court posited the issue as one of burden, noting that Section 554(c) operates upon a "presumption of intentional abandonment by the trustee" that "arises from an expectation that the trustee will certainly have knowledge of the existence of any asset that has been fully and formally disclosed by the debtor in his filings." Id. at 149. The court presented the issue as follows:

> Is it more appropriate to require a debtor to understand the technical distinctions among the various schedules and statements of a bankruptcy filing? Or should the bankruptcy trustee carry the burden of discerning a potential asset even when the asset is fully disclosed under the wrong heading? . . . Pro se debtors are faced with the task of filling out their own petition and attachments. All trustees, in contrast, are presumably selected for the trustee panel on the basis of their relative expertise and experience in the area of bankruptcy. It seems more reasonable and equitable to place a burden on the trustee to examine and evaluate all the readily available information filed with a petition, regardless of its categorization, rather than to expect a debtor, who may be pro se, to understand reporting distinctions which are frequently blurred.

Id. at 149-50.

15

The conclusion reached by the Hill court with respect to whom more appropriately bears the burden of proper filing in a bankruptcy case, especially when the debtor proceeds pro se, is certainly appealing. However, at odds with this notion is the fact that "[t]he bankruptcy laws place an uncompromising responsibility upon the debtor to file complete and accurate schedules and statements of intention." Conklin, 1994 WL 780898, at * 3. And, as discussed above, Section 554(c)'s requirements for abandonment of property by operation of law were imposed to alleviate factual disputes over whether implied abandonment by a trustee occurred in bankruptcy actions. See, e.g., id. at *4. Thus, as equitable as the Hill holding may be, it is inconsistent with the dictates and policies of Section 554, as has been recognized by every other court faced with the issue.

Additionally, and importantly, Hill is distinguishable from the current case on its facts. The Hill court, in addition to the equitable ground, rested its decision on the fact that the Trustee there, in his Report of No Distribution and Notice of Abandonment, stated his express abandonment of "any and all assets listed on the *statements* and schedules filed in this case that have not been otherwise administered." Hill, 1994 WL 780898, at 151 (emphasis in original). Thus, the court concluded that "the entire question of 'scheduled' property becomes academic where, as here, the trustee's report specifically abandons all property listed in statements as well as schedules." Id. In the instant case, the Trustee did not express an intention to abandon property listed in the Statement of Financial Affairs, where the Plaintiff indeed listed this lawsuit. The Final Decree issued by United States Bankruptcy Judge Dennis E. Milton on October 2, 2003, states only that the "estate of the above named debtor(s) has been fully administered," the Trustee has

been discharged, and the case is closed. (Def. Ex. I). Thus, the holding in <u>Hill</u> is distinguishable.

In conclusion, although this court recognizes that it is perhaps harsh to interpret the Bankruptcy rules to the detriment of a <u>pro se</u> litigant, I am compelled to do so here by the plain language of Section 554(c), the overwhelming trend of precedent that holds that property must be properly scheduled in accordance with the statute to deem it abandoned by operation of law, and the policies underlying Section 554. The Plaintiff's claim was not properly scheduled, and thus cannot be deemed abandoned by the Trustee.

## IV. Conclusion

For the reasons stated herein, the Defendant's motion for summary judgment is GRANTED and the Plaintiff's claim is hereby dismissed. The Plaintiff's claim was never abandoned and therefore remains property of the bankruptcy estate; the Plaintiff thus lacks standing to pursue this claim and it is accordingly dismissed. I note as well that all other arguments put forth by the Plaintiff in her motion papers, including her motion for sanctions against BOE, are without merit and do not warrant discussion in this opinion. The Clerk of Court is directed to mail a copy of this M&O to the <u>pro se</u> Plaintiff and to close this case.

SO ORDERED.

Date: July 13, 2006
      Brooklyn, N.Y.

/signed/
Nicholas G. Garaufis
United States District Judge