D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARYAM AYAZI,

                              Plaintiff,

                                                                    **MEMORANDUM & ORDER**

              -against-
                                                                    **08-CV-2456 (NGG) (CLP)**
                                                                    **98-CV-7461 (NGG) (CLP)**
NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

        Plaintiff Maryam Ayazi ("Ayazi"), proceeding *pro se*, has filed two similar actions, one

against the New York City Board of Education ("BOE") and one against the New York City

Department of Education ("DOE"), which will both be referred to as "Defendant."[1]  In both

Ayazi v. New York City Bd. of Educ., No. 98-CV-7461 (NGG) (CLP) (E.D.N.Y.) ("Ayazi I")

and Ayazi v. New York City Dep't of Educ., No. 08-CV-2456 (NGG) (CLP) (E.D.N.Y.) ("Ayazi

II"), Ayazi, who is disabled as a result of Post-Polio Syndrome, alleges that Defendant violated

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Due Process

Clause of the Fourteenth Amendment to the United States Constitution when, *inter alia*,

Defendant terminated Ayazi from a teaching position, refused to provide her with reasonable

accommodations for her disability, and revoked her teaching licenses. This Memorandum and

Order will address both cases. First, the court will clarify which claims remain to be litigated in

Ayazi I. Then the court will address Defendant's motion to dismiss in Ayazi II, which is granted

---

[1] While the BOE, an entity created by New York State law, and the DOE, an entity created in 2002 by the
BOE, are not synonymous, see Matson v. Board of Educ. of City School Dist. of New York, --- F.3d ---,
2011 WL 70572, at *18-19 (2d Cir. Jan. 11, 2011) (Straub, J., dissenting in part and concurring in part),
the differences between them are not relevant here.

in part and denied in part. Because Ayazi is proceeding *pro se*, her filings will be construed liberally and interpreted as raising the strongest arguments they suggest. See Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).

# I.   BACKGROUND

## A.   Ayazi I

### 1.   The Amended Complaint

On October 21, 2002, Ayazi filed an amended complaint in Ayazi I (Ayazi I, Docket Entry # 279, Ex. B.),[2] in which she alleged the following.

Ayazi began teaching for Defendant in the fall of 1996, when she was hired to teach English as a Second Language ("ESL") at Franklin K. Lane High School ("Franklin K. Lane"), in Queens, New York. (Id. ¶ 20.) Before teaching at Franklin K. Lane, Ayazi obtained a license to teach ESL. (Id. ¶ 21.) Ayazi subsequently obtained two more teaching licenses: one to teach ESL to adults and one to teach art in high school.[3] (Id.) At Franklin K. Lane, BOE employees rated Ayazi's teaching satisfactory. (Id. ¶¶ 22-23.) However, for budgetary reasons, Defendant transferred Ayazi, for the Spring 1997 semester, to Grover Cleveland High School ("Grover Cleveland"), also in Queens, where she was assigned to teach ESL. (Id. ¶¶ 24-25.)

At some point before or around the time she began teaching at Grover Cleveland, Ayazi informed Defendant by letter that, due to her Post-Polio Syndrome – a disability causing "mobility impairment and a stamina/endurance limitation" (id. ¶ 6) – it was necessary for her to rest and to avoid strenuous activity. (Id. ¶ 27.) Ayazi alleged that administrators at Grover Cleveland refused to provide reasonable accommodations. (Id. ¶¶ 28-29.) Furthermore, Ayazi's

---

[2] This docket entry number refers to a letter submitted by Ayazi, which included her 2002 amended complaint as an exhibit; the original is not posted on the Electronic Case Filing system and cannot otherwise be located.

[3] As will be discussed *infra*, this "license" to teach art was in fact a temporary substitute *certificate*.

supervisors repeatedly observed her in class – treatment other teachers did not receive. (Id. ¶ 30.) Ayazi's supervisors gave her one rating of "minimally satisfactory" and three "unsatisfactory" ratings for her teaching, in March and April of 1997. (Id. ¶¶ 31-32, 39, 44.) During this period, Ayazi was "asked to perform tasks that other teachers were not required to do" and was insufficiently trained. (Id. ¶¶ 33-37, 42.) Ayazi's unsatisfactory ratings resulted in Defendant discontinuing her employment at Grover Cleveland. (Id. ¶ 45.)

Defendant held an administrative hearing to consider Ayazi's discontinuance and, Ayazi alleged, violated Ayazi's due process rights by failing to inform her of the "charges against her" and denying her the right to call witnesses and present evidence to an impartial trier of fact. (Id. ¶ 50.) A New York State Supreme Court justice determined that Ayazi had been accorded faulty notice prior to the discontinuance hearing and ordered a new hearing. (Id. ¶¶ 54-55.) The hearing took place on September 1999, and, Ayazi alleged, she was again not accorded due process, in that she was not informed of the "new charges against her," and was not allowed to call witnesses or present evidence to an impartial trier of fact. (Id. ¶¶ 56-57.) The Chancellor of the BOE reaffirmed Ayazi's discontinuance in December 1999. (Id. ¶ 58.)

In addition to discontinuing her employment, Defendant, Ayazi alleged, repeatedly cancelled her teaching licenses "without notification and due process" and denied her the opportunity to pursue additional licensing, undermining her attempts to find employment. (Id. ¶¶ 46-47.) Defendant also "cancelled" Ayazi's "certificate" (Ayazi does not specify which certificate) and denied her the right to take an examination for a license in an "unrelated subject." (Id. ¶ 48.) Ayazi also alleged that she had been "systematically harmed" by Defendant's improper data entry into its Human Resources computer system. (Id. ¶ 49.)

Based on the above allegations, Ayazi stated five causes of action under Title I of the ADA, the Due Process Clause, and state and city human rights laws, as follows:

1) Defendant discriminated against Ayazi by denying her reasonable accommodations while she was a teacher at Grover Cleveland (id. ¶ 64-64);

2) After Ayazi sought reasonable accommodations, Defendant retaliated against her, first while she was teaching at Grover Cleveland, and thereafter by "continually los[ing], misplac[ing], or misrecord[ing] [her] certification and licensing" (id. ¶ 65-66);

3) While Ayazi was teaching at Grover Cleveland, Defendant treated her differently from other teachers and failed to properly train her (id. ¶ 67-68);

4) Defendant improperly cancelled and restricted Ayazi's "teaching certificates and licenses" (id. ¶ 69-70);

5) Defendant denied Ayazi due process at the hearings regarding the discontinuance of her employment at Grover Cleveland (id. ¶ 71-72).

## 2.   The Court's First Summary Judgment Order

On September 13, 2004, this court, adopting in part the report and recommendations submitted by Magistrate Judge Cheryl L. Pollak (see Ayazi I, Docket Entry # 100), dismissed, on Defendant's motion for summary judgment, most, but not all, of the causes of action raised in Ayazi I. (See Ayazi I, Docket Entry # 113 ("2004 Order").)

### a.   Dismissal of Ayazi's First Cause of Action

The court held that Ayazi was collaterally estopped from raising her first cause of action – that she was denied reasonable accommodations at Grover Cleveland – because that claim had been dismissed after full and fair litigation in state court. (Id. at 4-14.)[4]

---

[4] Contrary to Ayazi's assertion in her brief in opposition to Defendant's motion to dismiss in Ayazi II (Ayazi II, Docket Entry # 30 ("Ayazi Mem."), at 2 n.2, 5), nothing in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), undermines this court's collateral estoppel findings in the 2004 Order. While the Court in Exxon Mobil clarified the limits of the Rooker-Feldman doctrine, it also stated that that doctrine does not "override or supplant preclusion doctrine." Id. at 284.

      b.     Dismissal of Ayazi's Second Cause of Action, in Part, and
             Dismissal of Ayazi's Third Cause of Action

Ayazi's second cause of action consisted of two separate claims: first, that Defendant retaliated against her while she was employed at Grover Cleveland, culminating in the termination of her employment; and second, that Defendant retaliated against Ayazi thereafter, by interfering with her teaching licenses and certificates as she continued to look for work.

The court dismissed the first claim for two reasons. First, Ayazi failed to administratively exhaust that claim at the United States Equal Employment Opportunity Commission ("EEOC"). (Id. at 16-17.) Second, Ayazi failed to make a sufficient showing that Defendant's stated explanation for Ayazi's treatment at Grover Cleveland – *i.e.*, her poor performance as a teacher – was pretextual. (Id. at 17-24.) The court also dismissed Ayazi's third cause of action – alleging that she suffered from disparate treatment at Grover Cleveland – because of her failure to demonstrate pretext. (Id. at 24.)

      c.     Ayazi's Causes of Action Relating to Her Licenses, and the
             Court's Order to Show Cause

As to the second claim in Ayazi's second cause of action – alleging that Defendant retaliated against Ayazi by interfering with her licenses – the court found that there was no exhaustion bar, since Ayazi had raised the claim in a complaint filed with the EEOC. (Id. at 17.) However, the court did not analyze Ayazi's retaliation claim as to her licenses on the merits.

Instead, the court consolidated all analysis of Ayazi's license-related claims into its discussion of Ayazi's fourth cause of action, in which Ayazi alleged that Defendant had improperly cancelled or restricted her licenses and certificates. In particular, the court found that Ayazi had raised an issue of fact by alleging, in a sworn affidavit submitted in May 2003

(Ayazi I, Docket Entry # 274-2 ("2003 Ayazi Aff.")), that Defendant's placement of an "R" in Ayazi's medical records constructively revoked her teaching "license." (2004 Order at 27.) While the court used the singular word "license," Ayazi, in her 2003 affidavit, which the court relied upon, referred to *two* licenses: one to teach ESL in high school and one to teach ESL to adults. (See 2003 Ayazi Aff. ¶¶ 46, 65.) Therefore, Ayazi's claim applies to both ESL licenses.

The court held that Ayazi enjoyed a due-process-protected property interest in her licenses, requiring a pre-deprivation hearing, and found that she had not received such a hearing – the only issue of fact was whether Ayazi's licenses had actually been revoked. (2004 Order at 26-29.) Therefore, the court found that Ayazi had stated a due process claim that survived summary judgment. The court further ordered Defendant to show cause as to why Ayazi should not be *granted* summary judgment on this claim. (Id. at 29, 31.)

At no point, however, did the court address the issue of whether Defendant's actions with respect to Ayazi's licenses violated the ADA. In particular, the court did not address whether Ayazi had made a sufficient showing that Defendant, as alleged in the second cause of action, retaliated against Ayazi by constructively revoking, or otherwise interfering with, her licenses.

### d.   Dismissal of Ayazi's Fifth Cause of Action

Finally, the court dismissed Ayazi's fifth cause of action, in which she alleged that she was deprived of due process at the discontinuance hearings held by Defendant. (2004 Order at 30-31.) The court held that, since Ayazi, in her position at Grover Cleveland, had only probationary status as a teacher – a status that allowed Defendant to terminate her employment for any reason – she had no due-process-protected interest in her position, and thus could not make out a due process claim. (Id.)

6

e.     Summary

The court, by concluding that Ayazi's first, second, third, and fifth causes of action should be dismissed, and by characterizing Ayazi's surviving cause of action as alleging a procedural due process violation, implicitly suggested that none of Ayazi's ADA claims survived. (See 2004 Order at 31.) However, the reasoning of the 2004 Order simply does not apply to Ayazi's claim – stated in both her second and fourth causes of action – that Defendant retaliated against her by interfering with her licenses, thus violating the ADA. Therefore, any such claims survive the 2004 Order.

3.     The Court's Second Order as to Ayazi's Fourth Cause of Action

On April 8, 2005, in a second Memorandum and Order, this court denied Ayazi's motion for reconsideration, and also considered Defendant's response to the September 2004 order to show cause. (Ayazi I, Docket Entry # 131 ("2005 Order").) The papers submitted by the parties clarify the basis for Ayazi's surviving claims in Ayazi I.

As made clear in the affidavit of DOE Director of Certification Steven Catalano (Ayazi I, Docket Entry # 118-1 ("Catalano Aff.")), Ayazi was issued two teaching licenses: one to teach ESL in secondary schools (No. 559B/TT), which became effective in July 1996; and one to teach ESL to adults (No. 026B/TT), which became effective in August 1997. (Catalano Aff. ¶¶ 8, 10-11.) While Ayazi's applications for those licenses were pending, she was issued *certificates* – as opposed to licenses – allowing her to substitute teach in those areas ("substitute certificates"). (Id.) These substitute certificates were designated with the same prefix numbers as the corresponding licenses, but with the suffix code "81" – *i.e.*, 559B/81 and 026B/81; they were valid for one school year, although their validity "rolled over" and was extended for an extra school year if the license application was still pending. (Id. ¶¶ 8, 10-11, 12.)

7

In July 1996, Ayazi applied for a third license, this one to teach Fine Arts in high school. (Id. ¶ 12.) While this application was pending, Ayazi was issued a substitute certificate to teach Fine Arts, designated 579B/81, and valid for the 1996-97 school year. (Id.) Because Ayazi failed to appear for a required interview, her Fine Arts license application was denied in May 1997. (Id. ¶ 13.) Nevertheless, certificate 579B/81 "rolled over," allowing Ayazi to substitute teach in the area during the 1997-98 school year. (Id.) Ayazi reapplied for the same license in April 1998. (Id. ¶¶ 14, 16.) This time her application failed because Defendant's review of her record revealed that her performance at Grover Cleveland had been unsatisfactory. (Id.) Because Ayazi's application for a license to teach art was denied, substitute certificate 579B/81 did not "roll over" into the 1998-99 school year. (Id. ¶ 14.) Ayazi administratively appealed the denial of her application for the license to teach art, and the appeal was denied. (Id. ¶¶ 17-18.)

Catalano stated that Ayazi's two ESL licenses remained valid, but that she nevertheless could not be hired to teach ESL in high schools, as a result of her unsatisfactory performance at Grover Cleveland. (Id. ¶¶ 9, 19-21.) However, this did not preclude Ayazi from being hired to teach in intermediate, middle, or junior high schools, under license 559B/TT. (Id.)

Defendant submitted a second affidavit, this one by Mercuria Gibson, the supervisor of the Medical, Leaves and Benefits Office ("MLB") of the DOE. (Docket Entry # 118-2 of Ayazi I) ("Gibson Aff.").) Gibson included with her affidavit a printout from the Human Resources System ("HRS") database, showing six entries regarding Ayazi, from different dates, in the "Inquire on Medical Results" screen ("medical screen"). (Gibson Aff. Ex. C.) Gibson's affidavit, explaining these entries, indicated that all but one corresponded to Ayazi's submission to MLB of the results of medical examinations; the other entry corresponded to a request Ayazi had made for an accommodation for her disability. In two of the entries, dated October 16, 1996

8

(the entry corresponding to the accommodation request) and March 18, 1999 (corresponding to a physical examination) an "R" notation was placed in the column marked "result." Gibson explained that the first "R" indicated that Ayazi's request for an accommodation was "under review." (Gibson Aff. ¶ 7.) The second "R" indicated that Ayazi's "application" – presumably for a teaching position – was "under review." (Id. ¶ 10.) The second "R" is the last entry in the printout's "result" column – that is, no newer entry superseded the "R" in the "result" column. According to Gibson, "R" was not an "adverse notation," there were no "medical bars" preventing Ayazi from working, and none of the notations on the medical screen should have had any effect on Ayazi's licenses. (Id. ¶¶ 5, 7, 13.)

Ayazi, in January 2005, submitted her own affidavit in response to the Catalano and Gibson affidavits. (Ayazi I, Docket Entry # 121 ("2005 Ayazi Aff.").) Ayazi restated her fourth cause of action as follows: "[M]y teaching *licenses* were terminated by a MEDICAL BAR in the form of a letter 'R' placed in the Human Resources System ('HRS') database by the Medical, Leaves and Benefits office." (Id. ¶ 3 (emphasis added).) The term "licenses," as used by Ayazi in her affidavit, apparently referred to both Ayazi's ESL licenses and her substitute certificate to teach art. (See id. ¶¶ 4, 9 (using terms "license" and "certificate" interchangeably).) Ayazi, countering Catalano's claim that her ESL licenses remained valid, alleged that administrators working for Defendant as well as for the United Federation of Teachers stated, in 1998, that Ayazi no longer had any valid teaching licenses. (Id. ¶¶ 11-15.)

After reviewing those submissions, the court found that a question of fact remained as to whether "some impermissible adverse action was taken against [Ayazi's] licenses without due process." (2005 Order at 10.) The court here referred only to Ayazi's ESL licenses, since, the

court found, Ayazi had no due-process-protected interest in her substitute certificate to teach art, since the certificate was issued temporarily. (Id. at 7-8.)

As in the 2004 Order, the court did not address whether an ADA claim relating to Ayazi's licenses remained in the case. Since neither the 2004 Order nor the 2005 Order explained why such a claim should be dismissed, it survives. However, as explained *infra*, such an ADA claim extends only to the ESL licenses (559B/TT and 026B/TT); no claim regarding the substitute certificate to teach art (579B/81) remains.

### 4. Developments Since 2005

In 2006, the court granted Defendant's motion for summary judgment as to Ayazi's remaining claims in Ayazi I. (Ayazi I, Docket Entry # 192.) The court found that, since Ayazi had declared bankruptcy, her claim had become the property of the bankruptcy estate, such that Ayazi lacked standing. (Id.) Judgment was entered against Ayazi on April 4, 2007 (Ayazi I, Docket Entry #200.) On March 11, 2009, after the Court of Appeals for the Second Circuit vacated the April 4, 2007 judgment and remanded the case to this court, the case was reopened.[5] Since then, the case has been proceeding toward trial.

Currently in dispute are the contours of Ayazi's remaining cause of action. Ayazi, in a letter to the court dated January 14, 2011 (Ayazi I, Docket Entry # 279), contends that her remaining claim, regarding Defendant's interference with her licenses, was brought pursuant to the ADA. Specifically, Ayazi characterizes the issues remaining in the case as follows: "whether the defendant terminated the plaintiff's City licenses for appointment, [0]26B/TT[6] and 559B/TT, solely by reason of her disability, whether it intentionally terminated these licenses in violation

---

[5] At the same time, the court stayed the case pending Ayazi's reopening of her bankruptcy case. (Ayazi I, Docket Entry # 206.) After the bankruptcy trustee abandoned his interest in the litigation on September 18, 2009 (Ayazi I, Docket Entry # 212-1), the court lifted the stay (Ayazi I, Docket Entry # 215).

[6] Ayazi accidentally wrote "226/TT."

of the Americans with Disabilities Act (ADA), [and] whether it terminated her certificate [presumably referring to substitute certificate 579B/81] in retaliation for engaging in a protected activity." In contrast, Defendant, in a letter to the court dated January 19, 2011, insists that "the only remaining triable claim in this lawsuit is whether defendant deliberately placed an 'R' notation on a [sic] Inquire on Medical Results screen concerning the plaintiff in defendant's Human Resource System ('HRS') so as to revoke plaintiff's English as a Second Language license, 559B/TT, without procedural due process." (Ayazi I, Docket Entry # 272, at 2.) Defendant, citing Ayazi's 2003 affidavit, notes that Ayazi never specifically alleged that the "R" affected license 026B/TT. (Id. at 2-3.) However, as already discussed, a broad reading of Ayazi's 2003 and 2005 affidavits, together with her 2002 amended complaint, demonstrates that she did in fact allege that Defendant, through the "R" notation, wrongfully terminated *both* of her ESL licenses – No. 559B/TT to teach in secondary school and No. 026B/TT to teach adults.

**B.** **Ayazi II**

On June 12, 2008 – after all claims in Ayazi I had been dismissed by this court and prior to the case being reopened after remand from the Second Circuit – Ayazi filed her complaint in Ayazi II. (Ayazi II, Docket Entry # 1.) Ayazi's allegations in Ayazi II are, in large part, substantially identical to her allegations in Ayazi I.

In January 1996, Ayazi applied for a license to teach ESL in secondary school, and the license – 559B/TT – was issued in April 1996. (Id. ¶ 23.)

In September 1996, Ayazi was hired to teach ESL at Franklin K. Lane. (Id. ¶ 27.) As a condition of the employment offer, she was required to submit the results of a medical examination. (Id. ¶¶ 28-29.) Ayazi did so, indicating her history of polio. (Id.) Defendant entered the results into the HRS database, where the data was accessible through the medical

screen. (Id. ¶ 30.) Ayazi alleges that Defendant terminated teachers' licenses if the results of medical examinations were not coded "S" for satisfactory. (Id. ¶ 31.)

In October 1996, soon after she began teaching at Franklin K. Lane, Ayazi sought a reasonable accommodation for her disability. (Id. ¶ 32-33.) A BOE employee made an entry indicating that Ayazi had made such a request into the medical screen of the HRS database, accompanied by the notation "R," standing for "medical under review." (Id. ¶¶ 34-35.) Ayazi alleges that, unbeknownst to her, the entry of this "R" resulted in the termination of license 559B/TT at some point between October 1996 and January 1997. (Id. ¶¶ 23, 36.) Furthermore, even though a doctor working for Defendant found, in December 1996, that Ayazi's medical condition was satisfactory, no "S" was placed on Ayazi's medical screen. (Id. ¶ 38.)

Ayazi alleges that, as a result of the termination of license 559B/TT, she was transferred, against her seniority rights, to Grover Cleveland. (Id. ¶¶ 40-41.) At Grover Cleveland, she was "denied adequate accommodation, harassed, treated disparately . . . retaliated against for complaining about her terms and conditions of employment," and denied adequate training. (Id. ¶ 42.) Defendant terminated Ayazi's job at Grover Cleveland in June 1997, and, in 1999, that termination was upheld on administrative review. (Id. ¶ 43.)

In May 1998, Ayazi discovered that an "R" had been placed on license 559B/TT "due to a medical problem." (Id. ¶ 50.) When she complained to the BOE medical department, an administrator rated her condition "satisfactory," and license 559B/TT was reissued. (Id.)

In July 1996, Ayazi applied for a license to teach ESL to adults – No. 026B/TT – and the license was issued in May 1998. (Id. ¶¶ 25-26, 44, 50.) However, the license "was cancelled without Plaintiff's knowledge and without due process shortly after it was issued." (Id. ¶ 44.)

In July 1996, Ayazi applied for a third license, to teach art in high school. (Id. ¶ 25.) Pending the results of the application, Ayazi was issued a substitute certificate. (Id. ¶ 26.) Ayazi's first application for the license was denied because she missed a required interview, and she reapplied for the license in April 1998. (Id. ¶ 51.) In June 1998, she was interviewed by a BOE investigator, who told her that the principal of Grover Cleveland had submitted negative information about her. (Id. ¶ 52.) Ayazi responded that the information was false, but the investigator told her that her substitute certificate to teach art would be cancelled based on the principal's allegations, unless she submitted contrary evidence. (Id.) Ayazi submitted such evidence, but her substitute certificate was cancelled anyway, in June 1998. (Id. ¶ 53.)

In or around June 1998, Ayazi filed another disability accommodation request with the BOE. (Id. ¶ 54.)[7] This request allegedly terminated all of her teaching licenses – *i.e.*, 559B/TT and 026B/TT. (Id. ¶ 55.) In April 1999, Defendant required Ayazi to undergo a medical examination, and the doctor found her condition satisfactory. (Id. ¶ 56.) However, these results were not entered into Defendant's database. (Id.)

At some point, Defendant "placed a notation into the database on each of [Ayazi's] license screens that prevents Plaintiff from getting hired. This notation misrepresents that Plaintiff has a discontinuance of service under each of her licenses." (Id. ¶ 46.)

Because of the termination of her licenses, Ayazi was unable to find full-time work as a teacher. (Id. ¶¶ 46-48, 57.) In 2000, she was initially hired for a full-time position teaching ESL in high school, but the offer was rescinded after the school's principal checked to see if Ayazi was licensed. (Id. ¶ 48.) As a result of her lack of valid licenses, Ayazi could only find hourly

---

[7] It is not clear whether this request was related to any particular teaching position or application.

work. (Id. ¶ 57.) However, she was forced to stop doing hourly work as well, since Defendant

would not provide her with reasonable disability accommodations for such assignments. (Id.)

Ayazi alleges that license 559B/TT was reinstated after the 2004 Order in Ayazi I. (Id. ¶

58.) However, when Ayazi subsequently attempted to apply for jobs in 2005 and thereafter, she

was told that she could not interview "due to her past record." (Id. ¶¶ 61-62.)

Ayazi states four causes of action under the Due Process Clause and the ADA:[8]

1) Defendant violated the Due Process Clause and the ADA when it "terminated
and/or cancelled Plaintiff's license" after she requested a reasonable
accommodation for her disability (id. ¶¶ 63-64);
2) Defendant violated the ADA by failing to provide Ayazi with reasonable
accommodations, both when she taught at Grover Cleveland and when she sought
to teach ESL to adults, in an hourly capacity, at Fashion High School in
Manhattan (id. ¶¶ 65-66);[9]

3) Defendant violated the ADA by discriminating against Ayazi and/or retaliating
against her when Defendant terminated Ayazi's position at Grover Cleveland and
failed to provide adequate training after Ayazi attempted to secure reasonable
accommodations (id. ¶¶ 67-68);

4) Defendant retaliated against Ayazi for filing EEOC complaints and other
lawsuits by (i) "continually terminating and/or canceling her licenses and
certificates"; (ii) failing to reinstate Ayazi at Grover Cleveland, even though it
was clear that she had received insufficient training; (iii) "placing adverse
notations into the database that would deny her the opportunity to be hired"; (iv)
requiring Ayazi to undergo an "unlawful medical exam"; (v) refusing to accord
Ayazi reasonable accommodations for her disability when she sought to work as
an adult education teacher; and (vi) "continually denying her the right to interview
or be hired for full-time teaching positions" (id. ¶¶ 69-70).

## II. DISCUSSION

The court will address the disputed issue of what claims remain in Ayazi I and will then

address Defendant's motion to dismiss in Ayazi II.

---

[8] As in Ayazi I, the ADA claims are also brought under state and city human rights laws.

[9] This is the first mention of Ayazi's job at Fashion High School.

## A.    The Claims Remaining in Ayazi I

As discussed above, although some language in the court's 2004 Order and 2005 Order suggests that all of Ayazi's ADA claims were dismissed, the reasoning in those opinions does not support such a result. Nothing in those opinions explained why Ayazi's ADA claim regarding the termination of her licenses does not survive. Furthermore, Ayazi's allegations, read appropriately broadly in light of her *pro se* status, make clear that her claims relate not only to license 559B/TT to teach ESL in secondary school, but also to license 026B/TT to teach ESL to adults. Therefore, Ayazi is entitled to pursue her claims that Defendant, by revoking her ESL teaching licenses, discriminated or retaliated against her, in violation of the ADA. Ayazi's procedural due process claims regarding the revocation of her licenses also survive.

However, no claims regarding Ayazi's substitute certificate to teach art – No. 579B/81 – survive. As the court held in the 2004 Order, Ayazi had no due-process-protected interest in the substitute certificate, and thus its revocation cannot be the basis for a due process claim. As for Ayazi's claim that Defendant retaliated against her, in violation of the ADA, by revoking her substitute certificate, such a claim must be dismissed for the same reason that Ayazi's claims regarding retaliation and disparate treatment at Grover Cleveland were dismissed. Defendant made clear that Ayazi's application for a license to teach art was denied because of her poor teaching record. (Catalano Aff. ¶¶ 14-18.) As a result of that denial, the validity of Ayazi's substitute certificate expired. (Id.) Thus, according to Defendant, Ayazi's substitute certificate was revoked for the same reason that Ayazi was treated differently from other teachers at Grover Cleveland and ultimately fired from that position: her poor performance as a teacher. Ayazi has not presented any evidence indicating that Defendant's claimed reason is pretextual. Therefore,

15

any ADA claim regarding the revocation of substitute certificate 579B/81 must be dismissed. (See 2004 Order at 17-24 (discussing required pretext showing under the ADA).)[10]

## B.    Defendant's Motion to Dismiss in Ayazi II

### 1.    The Applicable Law

#### a.    Motion to Dismiss Standard

Defendant, invoking the doctrine of *res judicata* and the applicable statutes of limitations, moves to dismiss Ayazi's claims in Ayazi II under Federal Rule of Civil Procedure 12(b)(6). (Ayazi II, Docket Entry # 17.) When evaluating such a motion, a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive such a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. Twombly, 550 U.S. at 555. Rather, the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." Id. On a motion to dismiss, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

---

[10] The pretext analysis does not apply to Ayazi's claims regarding her *licenses*, since Defendant does not admit that they were revoked, and thus any discussion of whether Defendant's claimed reason for such revocation was pretextual would be incoherent.

16

### b. Statute of Limitations

Whether a claim is brought under Title I of the ADA or, via 42 U.S.C. § 1983, under the Due Process Clause, it accrues when the plaintiff knows or has reason to know of the injury serving as the basis for the claim. See Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). For claims under the ADA, where the plaintiff has sought relief in state administrative proceedings, the plaintiff has 300 days from the date of accrual to file a complaint with the EEOC. 42 U.S.C. § 2000e-5(e)(1) (incorporated into the ADA by reference in 42 U.S.C. § 12117(a)). Under Section 1983, a plaintiff has three years from the date of accrual to bring a claim. See Harris, 186 F.3d at 247-48.

Ayazi filed an EEOC complaint raising her ADA claims on December 20, 2006. (See attachment to Ayazi II Complaint.) Therefore, any ADA claims that accrued prior to 300 days before that date – i.e., February 23, 2006 – are time-barred. And any due process claims that accrued prior to June 12, 2005 – three years before Ayazi II was filed – are time-barred.

If a plaintiff alleges sufficient facts to state a "continuing violation" – for example, "an ongoing discriminatory policy or practice, such as use of discriminatory . . . employment tests" – the date of accrual is delayed until the commission of the last discriminatory act in furtherance of the policy. Harris, 186 F.3d at 248. However, it is not enough for the plaintiff to state conclusorily that the alleged policy is ongoing. Instead, "[t]o bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).

Claims based on the wrongful termination of a license accrue at the time of termination – that is, the accrual date is not indefinitely pushed back as long as plaintiff lacks a license, or as

17

long as such a lack has adverse effects. See Loyal Tire & Auto Center, Inc. v. Town of Woodbury, 445 F.3d 136, 151 (2d Cir. 2006) (statute of limitations period for claim alleging suspension of towing license without proper notice began to run when license was suspended).

### c. Issue Preclusion

In Defendant's Memorandum of Law in support of its motion to dismiss (Ayazi II, Docket Entry # 19) – filed after this court had dismissed every claim in Ayazi I and prior to the Second Circuit's remand – Defendant invoked the doctrine of *res judicata*, or claim preclusion (id. at 13-14), which generally applies where the previous action has been fully litigated, see Bank of New York v. First Millennium, Inc., 607 F.3d 905, 918 (2d Cir. 2010). Since Ayazi I, after the Second Circuit's remand, remains open, the more appropriate doctrine is collateral estoppel, or issue preclusion, which the court may apply *sua sponte*. See Curry v. City of Syracuse, 316 F.3d 324, 330-31 (2d Cir. 2003). Issue preclusion applies where (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. See First Millennium, 607 F.3d at 918. Several of the claims Ayazi raises in Ayazi II were litigated and decided in Ayazi I, and therefore must be dismissed as collaterally estopped.

### 2. Ayazi's Claims

#### a. First Cause of Action

Ayazi alleges that, by 1998, her licenses were terminated, in violation of the ADA and the Due Process Clause. She does not make clear, in the Ayazi II complaint, exactly when she learned that her licenses were terminated, though she appears to have found out no later than 2000, when a principal rescinded a job offer after checking her licensing status. (Ayazi II

18

Complaint ¶ 48.) In any event, it is clear that Ayazi was aware of the cancellation of her licenses by 2002, when she filed the amended complaint in Ayazi I. The court may take judicial notice of the Ayazi I complaint. See Harris v. New York State Dep't of Health, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002) (court may "take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action") (citing Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)). Ayazi's first cause of action, which accrued no later than 2002, is time-barred.

Ayazi alleges that Defendant has a practice and policy of terminating teachers' licenses based on impermissible medical criteria. (See Ayazi II Complaint ¶ 2; Ayazi Mem. at 4, 8, 11.) However, she does not allege that any such terminations occurred after June 2005, *i.e.*, within the statute of limitations period for a due process claim (much less within the shorter period applicable to ADA claims). Therefore, this cause of action is time-barred, notwithstanding Ayazi's allegation of a continuing policy.

### b. Second Cause of Action

Ayazi's second cause of action has two parts. First, Ayazi alleges that Defendant violated the ADA by failing to provide her with a reasonable accommodation at Grover Cleveland. Second, Ayazi alleges that Defendant failed to provide a reasonable accommodation when Ayazi sought an hourly adult education position at Fashion High School in Manhattan.

The first part of this cause of action is clearly time-barred, as Ayazi became aware of the relevant events in 1997. It is also barred by collateral estoppel, since an identical claim was adjudicated in Ayazi I.

19

The second part of this cause of action was not adjudicated in Ayazi I, and so is not barred by collateral estoppel. However, at no point does Ayazi specify when she sought hourly work, or when she was denied reasonable accommodations. She therefore pleads insufficient facts for the court to determine whether this claim is time-barred. In light of Ayazi's *pro se* status, she will be given thirty days to replead, in an amended complaint, any ADA claims regarding Defendant's denial of reasonable accommodations in the context of Ayazi's attempts to be hired on an hourly basis. Ayazi must specify when such denials occurred and is advised that any such claims that accrued prior to February 23, 2006 will be dismissed as time-barred.[11]

### c. Third Cause of Action

Ayazi's third cause of action, regarding her treatment at Grover Cleveland in 1997, is clearly time-barred. The cause of action is also barred by collateral estoppel, since identical claims were adjudicated in Ayazi I.

### d. Fourth Cause of Action

Ayazi's fourth cause of action alleges six separate ways in which Defendant, in violation of the ADA, retaliated against Ayazi for filing EEOC complaints and lawsuits.

### i. First Retaliation Claim

Ayazi alleges that Defendant retaliated by terminating her licenses and certificates. This claim is dismissed for the same reasons applicable to Ayazi's first cause of action.

---

[11] In her complaint, Ayazi alleges that Defendant's actions, in addition to violating the ADA, also violated New York state and city human rights laws. To the extent Ayazi successfully states a federal cause of action, such claims may be considered by the court under its supplemental jurisdiction. See 28 U.S.C. § 1367(a). However, Ayazi is advised that the statute of limitations for claims against a school district is one year. See Amorosi v. South Colonie Independent Cent. School Dist., 9 N.Y.3d 367, 373 (2007). Furthermore, a plaintiff's filing of an EEOC complaint does not toll the running of the statute of limitations. See Smith v. Tuckahoe Union Free School Dist., No. 03 CV 7951 (PGG), 2009 WL 3170302, at *11 n.9 (S.D.N.Y. 2009); cf. Duran v. Jamaica Hosp., 216 F.Supp.2d 63, 66-68 (E.D.N.Y. 2002) (in Title VII case, filing of EEOC complaint does not toll statute of limitations for supplemental state tort claim). Therefore, in Ayazi II, the court will only consider supplemental state or city claims that accrued after June 12, 2007.

ii.     Second Retaliation Claim

Ayazi alleges that Defendant retaliated against her by failing to reinstate her after administratively reviewing her dismissal. This administrative review took place between 1997 and 1999. (Ayazi II Complaint ¶ 43.) Therefore, the claim is time-barred.

iii.     Third Retaliation Claim

Ayazi alleges that Defendant retaliated against her by placing adverse notations into its database that prevented Ayazi from being hired. Ayazi makes several allegations regarding "notations." Most involve Defendant's placement of an "R" notation on Ayazi's medical records, or Defendant's failure to input an "S" notation for "satisfactory." (See Ayazi II Complaint ¶¶ 35-36, 38, 50, 54-56.) These allegations all involve events that took place prior to 1999, and are thus time-barred.

Ayazi also alleges that Defendant "placed a notation into the database on each of her license screens that prevents Plaintiff from getting hired" and that "[t]his notation misrepresents that Plaintiff has a discontinuance of service under each of her licenses." (Id. ¶ 46.) The notation Ayazi describes here appears to be separate from the "R" notation. However, Ayazi does not specify when such a notation was placed into Defendant's database. She therefore pleads insufficient facts for this court to determine whether this claim is time-barred. Ayazi will be given thirty days to replead, in an amended complaint, any claim that Defendant placed additional notations in her records, thereby invalidating her licenses. Ayazi must state approximately when such notations were placed in her records and is advised that if such placement occurred prior to June 2005, any Due Process claim will be dismissed as time-barred. If the notation occurred prior to February 2006, any ADA claim will be dismissed.

### iv.     Fourth Retaliation Claim

Ayazi alleges that Defendant retaliated against her by requiring her to undergo a medical examination. Ayazi refers to two medical examinations, one in 1996 and one in 1999. (Ayazi II Complaint ¶¶ 38, 56.) Any claims relating to these examinations are time-barred.

### v.     Fifth Retaliation Claim

Ayazi alleges that Defendant retaliated against her by refusing to provide reasonable accommodations when she sought work as an adult education teacher. This claim appears to overlap with the second part of Ayazi's second cause of action, in which she alleges that Defendant failed to provide reasonable accommodations when Ayazi sought to teach adults at Fashion High School. The difference is that, in this claim, Ayazi alleges retaliatory motive.

As with the second part of Ayazi's second cause of action, Ayazi has not pleaded sufficient facts for this court to determine whether Ayazi's claim is time-barred. Ayazi will thus again be given thirty days to replead, in an amended complaint, any claim that Defendant retaliated against her by denying reasonable accommodations when she sought work as a teacher on an hourly basis. Ayazi must specify when such denials occurred and is advised that any such claims that accrued prior to February 23, 2006 will be dismissed as time-barred.

### vi.     Sixth Retaliation Claim

Finally, Ayazi alleges that Defendant retaliated against her by refusing to interview or hire her for full-time teaching positions. Ayazi alleges that Defendant generally refused to hire her for full-time positions once all of her licenses had been terminated (Ayazi II Complaint ¶¶ 46, 57); that she was initially offered a full-time job in 2000, but that the offer was rescinded once the principal of the school looked into her licensing status (id. ¶ 48); and that, after July 2005, she was told that she could not interview for full-time positions "due to her past record"

22

(id. ¶¶ 61-62). To the extent Ayazi simply alleges that Defendant's refusal to interview or hire her was caused by the revocation of her licenses, she does not state a separate claim, but merely describes the *effects* of the alleged cancellation of her licenses.

However, Ayazi also appears to allege that Defendant's refusal to interview or hire her was *independently* motivated by the intent to retaliate against her, in violation of the ADA. Once again, Ayazi does not specify the time when such events occurred, making it impossible for this court to determine whether the claim is time-barred. Ayazi is again granted thirty days to replead, and to specify in an amended complaint the particular instances in which Defendant allegedly refused to interview or hire her, with retaliatory motive. Ayazi is advised that any claims relating to such instances that occurred prior to February 23, 2006 will be dismissed as time-barred.

## III. CONCLUSION

In Ayazi I, Ayazi's remaining claim is that Defendant violated the ADA and the Due Process Clause by constructively revoking her licenses to teach ESL – *i.e.*, license 559B/TT and license 026B/TT.

Defendant's motion to dismiss in Ayazi II is granted as to all claims other than those that Ayazi is granted leave to replead. In particular, Ayazi is granted thirty days from the date of this Memorandum and Order to replead the following claims: (1) that Defendant violated the ADA by denying Ayazi reasonable accommodations for her disability in the context of her attempts to find hourly work; (2) that such denials were retaliatory, in violation of the ADA; (3) that Defendant violated the ADA and/or the Due Process Clause by placing adverse notations, other than an "R," in Ayazi's records, thereby invalidating her teaching licenses; and (4) that Defendant, with retaliatory motive, refused to interview or hire Ayazi. Any amended complaint

filed by Ayazi must specify when such claims accrued so that the court may determine whether they are time-barred. If Ayazi does not submit an amended complaint within thirty (30) days of the date of this Memorandum and Order, the complaint in Ayazi II will be dismissed in full, and the case will be closed.

SO ORDERED.

s/NGG

Dated: Brooklyn, New York
February _7_, 2011

NICHOLAS G. GARAUFIS
United States District Judge

24