FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 3 0 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MARYAM AYAZI,

                Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.

----------------------------------------------------------------X

**MEMORANDUM & ORDER**

08-CV-2456 (NGG) (CLP)
98-CV-7461 (NGG) (CLP)

NICHOLAS G. GARAUFIS, United States District Judge.

      There has been some confusion in this case regarding the status of Plaintiff Maryam Ayazi's substitute certificate to teach art, designated with the number 579B/81. In its April 8, 2005 memorandum and order on Defendant's motion for summary judgment, the court rejected Ayazi's claim that the certificate was protected by due process, finding that it had been issued temporarily. (Docket Entry # 131 of Ayazi I (98-CV-7461) at 7-8.) The court reiterated this view in its February 8, 2011 order clarifying the issues remaining for trial. (Docket Entry # 284 of Ayazi I at 15.) Upon Ayazi's motion for reconsideration (Docket Entry # 286), the court determined that its prior finding that the substitute certificate was not protected by due process was insufficiently supported. Accordingly, the court twice ordered the parties to provide further factual clarification. (Docket Entry ## 299, 313 of Ayazi I.) Despite the parties' responsive submissions, the record continues to be insufficiently clear for the issue to be definitively resolved. The court declines to order further submissions and finds that there is a question of

fact for trial as to whether Ayazi's substitute certificates to teach art, issued for the 1997-98 and 1998-99 school years, were cancelled without due process of law.[1]

## I. SUMMARY JUDGMENT STANDARD

Because the issue at hand is rooted in the court's 2005 order on Defendant's motion for summary judgment, the court will apply the summary judgment standard. A motion for summary judgment may only be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000). Further, the burden of showing the absence of any genuine dispute as to a material fact rests on the movant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II. DISCUSSION

### A. Defendant's Submissions

Defendant submits the sworn declaration of Valerie Fallon, Deputy Director of Certificates and Licensing for the Department of Education. (Fallon Decl. (Docket Entry # 322 of Ayazi I) ¶ 1.) Fallon states that Ayazi's substitute certificate to teach art, 579B/81, was a

---

[1] As this court has previously noted, a government-issued license is protected by due process where the recipient continues to be entitled to the benefit the license confers. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1971); Behrend v. Klein, Nos. 04-CV-5413 (NGG), 04-CV-5414 (NGG), 2010 WL 627696, at *6 (E.D.N.Y. Feb. 22, 2010); Balakrishnan v. Kusel, No. 08-CV-1440 (BMC), 2009 WL 1291755, at *10 (E.D.N.Y. May 8, 2009); Hemmige v. Chicago Pub. Sch., 786 F.2d 280, 286 (7th Cir. 1986).

"conditional provisional certificate," which was "automatically issued" to teachers who applied for a New York City ("City") "regular license" to teach, and who also held a state-issued, permanent teaching certificate. (Id. ¶ 4.) According to Fallon, such certificates were valid for one year only, but could be automatically renewed on a yearly basis (i.e., they "rolled over"), to the extent the applicant continued to hold the state certificate *and* her license application was still pending. (Id. ¶¶ 6-8.) Fallon states that such certificates could not "roll over" once the license application was resolved—i.e., once the license was either granted or denied. (Id. ¶ 10.)

In support of these contentions, Fallon submits Chancellor's Regulation C-201, which governed the City's licensing of teachers during the relevant time period. (Id. Ex. A.) Section 6(b)(1) of Regulation C-201 stated that "New York City certificates," designating their holders as "Certified Provisional Teacher[s]," were issued to applicants for regular City licenses, who held a state-issued certificate "but ha[d] not *yet* secured" the City license. (Id. Ex. A § 6(b)(1) (emphasis added).) It would of course be incoherent to apply such language to license applicants whose applications had been *denied*, since it could not fairly be said that they had not "yet" secured their licenses.

Fallon also relies on a copy of Ayazi's substitute certificate itself. (Id. Ex. B.) Most significantly, the certificate was marked with both an "effective date" of September 2, 1997 and an "expiration date" of August 31, 1998. (Id.) In other words, the certificate, on its face, was valid for only one year. The certificate also stated that it was issued "*on the basis* of application for a Regular New York City License in the same subject area AND possession of a valid New York State Certificate." (Id. (emphasis added).)

Fallon also states—this time without providing any supporting documentation—that, if the regular City license applicant failed the "appraisal of record or background investigation,"

3

the application would be denied, and the certificate would not "roll over" into the following year. (Id. ¶ 9.)

According to Fallon, Ayazi first applied for a regular City license to teach art in July 1996, and her application was designated with the number 579B/TT. (Id. ¶ 12 & Ex. C.) As a result of this application, and because Ayazi held a state-issued teaching certificate, she was issued a corresponding substitute certificate: 579B/81. (Id. ¶ 14.) This certificate allowed Ayazi to substitute teach during the 1996-1997 school year. (Id. ¶ 15.) On January 8, 1997, Ayazi failed to appear for a required interview, and therefore, according to Fallon, her license application was denied in May 1997. (Id. ¶¶ 16.)

Even though Ayazi's license application had already been denied, she was issued another substitute certificate, valid from September 1997 to August 1998. (Id. ¶¶ 18, 20 & Ex. C.) Fallon explains that Ayazi's certificate "rolled over" despite the denial of her first, July 1996 license application because the denial had *not* been based on Ayazi "failing the background investigation or appraisal of record." (Id. ¶ 18.) In contrast to a negative background investigation, simply missing an interview did not implicate Ayazi's "fitness to teach." (Id.)

Ayazi applied a second time for a regular City license to teach art in April 1998. (Id. ¶ 21 & Ex. D.) This application was denied, according to Fallon, because Ayazi failed the "appraisal of record." (Id. ¶¶ 23, 24.) Fallon attaches a letter sent to Ayazi on July 14, 1998 by a Board of Education administrator. (Id. ¶ 24 & Ex. E.) The letter informs Ayazi that her application for a license to teach art was "denied" "[a]fter an investigation and review of [her] unsatisfactory teaching service." (Id.) Fallon submits another letter sent to Ayazi, this one on September 28, 1998, by another administrator, informing her that her appeal of the denial of her license application had been denied. (Id. ¶ 26 & Ex. F.)

4

Fallon acknowledges that she created confusion in her previous submission to the court, in which she stated that Ayazi's 1997-1998 certificate had been "cancelled" on July 17, 1998—i.e., over a month before the "expiration date" of August 31, 1998, as printed on the certificate itself. (Docket Entry # 309 of Ayazi I ¶ 20.) Fallon now states that the 1997-1998 certificate was not in fact "cancelled" in July 1998, but that it expired on August 31, 1998, according to "its own terms." (Fallon Decl. ¶¶ 28, 31.) Instead, Fallon states, July 17, 1998 was simply the date on which it was determined that that 1997-1998 certificate would not "roll over" into the 1998-1999 school year. (Id. ¶¶ 28-30.)

Further confusion is created by the existence of a substitute certificate, designated 579B/81, with an effective date of September 8, 1998 and an expiration date of August 31, 1999—i.e., a certificate issued to Ayazi for the *1998-1999* school year. (Id. Ex. H.) Fallon explains that, at the time, the Human Resources office ran a computer program that would automatically generate, in June of any given year, a list of substitute certificates set to "roll over" for the following year. (Id. ¶ 39.) Since, according to Fallon, Ayazi's regular City license application was denied in July 1998—after the automatic creation of the substitute certificate "roll over" list in June—this computer program added Ayazi to the list of teachers whose substitute certificates were to be issued for the following year. (Id. ¶¶ 40-41.) As a result, Ayazi was "erroneously issued a substitute certificate to teach art for the 1998-1999 school year on August 13, 1998"; the certificate was cancelled the next day, August 14, 1998. (Id. ¶¶ 42-43.)

In support of this account, Fallon attaches a computer database screen printout with a list of Ayazi's licenses and certificates. (Id. Ex. G.) Three of these are designated with the code 579B/81. (Id.) The first two, dated September of 1996 and 1997, respectively, were assigned a status of "REPROMUL," presumably standing for "repromulgate." (Id.) The third, dated

5

September 1998, was assigned a status of "PROM CANCEL," presumably meaning that its "promulgation" was cancelled, with a "status date" of August 14, 1998. (Id.)

### B.     Ayazi's Submissions

Ayazi argues that, contrary to Fallon's contentions, her substitute certificate to teach art was valid (i.e., automatically renewed) as long as her state-issued certificate was valid—regardless of whether her regular City license application was granted or denied. (Ayazi Mem. (Docket Entry # 325 of Ayazi I) at 2.) This view is unsupported by the evidence. As discussed above, each substitute certificate issued to Ayazi had an "expiration date" printed on it, clearly indicating that its validity was temporally limited. (Fallon Decl. Exs. B, G.) Moreover, as noted above, Chancellor's Regulation C-201, provided by Fallon, made clear that substitute certificates were issued to teachers who had "not yet secured" licenses (id. Ex. A § 6(b)(1)), and the text printed on the certificates themselves indicated that they were issued "on the basis" of an application for a regular City license (id. Exs. B, G). These documents show that a substitute certificate holder could not assume that her certificate would be reissued year after year, even after the denial of her application for a regular City license.[2]

That said, Ayazi does provide evidence contradicting Fallon's account. She submits a letter, sent to her by a Board of Education administrator, and dated December 23, 1998—i.e., several months after Ayazi's license application was purportedly denied, according to Fallon. (Ayazi Aff. (Docket Entry # 327 of Ayazi I) Ex. 4.) The letter states that Ayazi "[r]ecently

---

[2] The documentation Ayazi submits in support of her view that a substitute certificate remained valid so long as its holder held a state-issued teaching certificate is unavailing. Ayazi's first submission, which consists of excerpts from a February 1, 2011 deposition of Cathi Schoenberger, simply does not contradict Fallon's account. (Ayazi Aff. (Docket Entry # 327 of Ayazi I) Ex. 1.) Ayazi's second submission, an excerpt from the collective bargaining agreement between Defendant and the Teacher's Union, states, in relevant part, that substitute certificates "do not require annual renomination." (Id. Ex. 2 at 2.) First, it is not clear what "renomination" means. Second, nothing in Fallon's account contradicts the collective bargaining agreement, since Fallon does not assert that any process termed "renomination" was necessary for substitute certificates to "roll over."

6

received notification of the time and date of [her] scheduled interview examination in connection with [her] application(s) for license(s) as a New York City teacher of [] FINE ARTS . . . 579B," and informs Ayazi that the interview is scheduled for "01/09/99." (Id.) If, as Fallon contends, Ayazi's regular City license application was denied in July 1998, there would have been no reason for the Board of Education, several months later, to have scheduled an interview with her, in connection with the same application.

Ayazi also provides several Board of Education database screen printouts. (Id. Ex. 4.) One of these screens is titled "Exam Results Inquiry" and corresponds to Ayazi's second, 1998 application for a regular City license to teach art (designated with the number 579B/TT). (Id. Ex. 4 at 41.) The screen indicates that Ayazi's "appraisal" (designated with the code "AP" (id. Ex. 4 at 39 (defining codes)) was rated "U" for "unsatisfactory" on July 17, 1998 (id. Ex. 4 at 41). This evidence is consistent with Fallon's account. However, the database screen also indicates that Ayazi's interview, dated January 9, *1999*, was rated "S" for "satisfactory." (Id.)

The documentation Ayazi provides—indicating that she was interviewed in connection with her regular City license application in January 1999—contradicts Fallon's contention that Ayazi's license application was denied in July 1998. Indeed, the circumstances, and the date, of the denial of Ayazi's license application remain unclear. If the license application was denied sometime after January 1999—as Ayazi's documentation implies—then it may be that the substitute certificate to teach art that was issued for the 1998-99 school year was, or should have been, valid and operational. If so, then it should have expired on August 31, 1999 (unless it was cancelled "for cause," pursuant to Special Circular No. 31R (Docket Entry # 312-2 of Ayazi I Ex. 2 at 1)).

7

The parties' submissions do not make clear at what point Ayazi's substitute certificates to teach art ceased to be valid. Nor do the submissions make clear under what circumstances they were cancelled. In Fallon's previous submission, she stated that the certificate issued for the 1997-98 school year was cancelled in July 1998—over a month before its printed expiration date of August 31, 1998. Fallon now states that that certificate continued to be valid until August 31, 1998, and simply did not roll over into the next year. However, as discussed, another substitute certificate was issued for the 1998-99 school year—and it is not clear if that certificate was ever valid. According to Fallon, its issuance was a mistake, and it was cancelled after one day, since Ayazi's regular City license application had already been denied. However, this account is contradicted by the evidence provided by Ayazi that her license application was not in fact rejected until sometime after January 1999. Accordingly, there are material issues of fact for trial as to when Ayazi's substitute certificates, issued for the 1997-98 and 1998-99 school years, were cancelled, and as to whether they were cancelled without the due process of law.

## III. CONCLUSION

For the aforementioned reasons, Ayazi's motion for reconsideration (Docket Entry # 286) is GRANTED in part. A question of fact for trial remains as to whether Ayazi's substitute certificates to teach art, issued for the 1997-98 and 1998-99 school years, were terminated without due process. In addition, Ayazi is granted thirty (30) days from the date of this memorandum and order to amend her Complaint in Ayazi II (08-CV-2456) as discussed in the court's February 8, 2011 memorandum and order (Docket Entry # 284).

SO ORDERED.

s/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge

Dated: Brooklyn, New York
       September 30, 2011